Exhibit 2

## PLEDGE AND SECURITY AGREEMENT

### (Mezzanine 2 Loan)

THIS PLEDGE AND SECURITY AGREEMENT (Mezzanine 2 Loan) (this "**Agreement**"), dated as of November 30, 2018, made by **GVS PORTFOLIO I B, LLC**, a Delaware limited liability company ("**Borrower**"), in favor of **UBS AG, BY AND THROUGH ITS BRANCH OFFICE AT 1285 AVENUE OF THE AMERICAS, NEW YORK, NEW YORK**, as Lender (collectively, with its successors and assigns the "**Lender**").

### RECITALS

**A.**     UBS AG, by and through its branch office at 1285 Avenue of the Americas, New York, New York, in its capacity as mortgage lender (in such capacity, "**Mortgage Lender**"), is making a mortgage loan in the original principal amount of $110,000,000 to each of the entities set forth on <u>Schedule I</u> attached hereto, each a Delaware limited liability company (collectively, "**Mortgage Borrower**") pursuant to a Loan Agreement, dated as of the date hereof, between Mortgage Borrower and Mortgage Lender.

**B.**     UBS AG, by and through its branch office at 1285 Avenue of the Americas, New York, New York, in its capacity as mezzanine 1 lender (in such capacity, "**Mezzanine 1 Lender**"), is making a mezzanine 1 loan in the original principal amount of $103,000,000 to **GVS PORTFOLIO I, LLC**, a Delaware limited liability company ("**Mezzanine 1 Borrower**") pursuant to a Mezzanine 1 Loan Agreement, dated as of the date hereof, between Mezzanine 1 Borrower and Mezzanine 1 Lender.

**C.**     Borrower is the legal and beneficial owner of all of the equity interests in Mezzanine 1 Borrower, consisting of 100% of the limited liability company interests therein.

**D.**     Mezzanine 1 Borrower is the legal and beneficial owner of all of the equity interests in Mortgage Borrower, consisting of 100% of the limited liability company interests therein.

**E.**     Borrower has requested Lender to make a loan to it in the original principal amount of $63,000,000 (the "**Loan**") pursuant to that certain Mezzanine 2 Loan Agreement, dated as of the date hereof, between Borrower and Lender (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Loan Agreement**").

**F.**     It is a condition precedent to the obligation of Lender to make the Loan to Borrower, as borrower under the Loan Agreement (as defined below), that Borrower shall have executed and delivered this Agreement to Lender.

**NOW, THEREFORE**, in consideration of the premises and to induce Lender to make its loan under the Loan Agreement, Borrower hereby agrees with Lender as follows:

**1.**     **Defined Terms.** As used in this Agreement, the following terms have the meanings set forth in or incorporated by reference below:

"**Agreement**" means this Pledge and Security Agreement (Mezzanine 2 Loan), as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time.

"**Article 8 Matter**" means any action, decision, determination or election by Mezzanine 1 Borrower or its member(s) that its stock, limited liability company membership or partnership interests or other equity interests, or any of them, be, or cease to be, a "security" as defined in and governed by Article 8 of the Code, and all other matters related to any such action, decision, determination or election.

"**Borrower**" has the meaning ascribed to such term in the Recitals.

"**Cash Management Agreement**" means that certain Cash Management Agreement of even date herewith among Mortgage Lender, Mortgage Borrower, and Cash Management Bank (as defined in the Loan Agreement), as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time.

"**Code**" means the Uniform Commercial Code from time to time in effect in the State of New York.

"**Collateral**" has the meaning ascribed to such term in Section 2 hereof.

"**Issuer**" means each of the entities set forth as "Issuer" on Schedule II attached hereto.

"**Lender**" has the meaning ascribed to such term in the introductory paragraph.

"**Loan**" has the meaning ascribed to such term in the Recitals.

"**Loan Agreement**" has the meaning set forth in the Recitals.

"**Loan Documents**" has the meaning ascribed to such term in the Loan Agreement.

"**Mezzanine 1 Borrower**" has the meaning ascribed to such term in the Recitals.

"**Mezzanine 1 Borrower Company Agreement**" means the limited liability company agreement of Mezzanine 1 Borrower.

"**Mortgage Borrower**" has the meaning ascribed to such term in the Recitals.

"**Mortgage Borrower Company Agreement**" means the limited liability company agreement of Mortgage Borrower.

"**Mortgage Lender**" has the meaning ascribed to such term in the Recitals.

"**Note**" has the meaning ascribed to such term in the Loan Agreement.

"**Pledged Interests**" means the stock, limited liability company membership or partnership interests of Borrower in Mezzanine 1 Borrower listed on Schedule II hereto, together

- 2 -

with all stock, limited liability company membership or partnership interest certificates, options or rights of any nature whatsoever which may be issued or granted by Mezzanine 1 Borrower to Borrower while this Agreement is in effect.

"**Proceeds**" means (i) Borrower's share, right, title and interest in and to all distributions, monies, fees, payments, compensations and proceeds now or hereafter becoming due and payable to Borrower by Mezzanine 1 Borrower with respect to the Pledged Interests whether payable as profits, distributions, asset distributions, repayment of loans or capital or otherwise and including all "proceeds" as such term is defined in Section 9-102(a)(64) of the Code; (ii) all contract rights, general intangibles, claims, powers, privileges, benefits and remedies of Borrower relating to the foregoing; and (iii) all cash or non-cash proceeds of any of the foregoing.

"**Special Damages**" has the meaning ascribed to such term in Section 17(k) hereof.

Terms used herein but not otherwise defined herein shall have the respective meanings ascribed to them in the Loan Agreement.  All references to sections and schedules are to sections and schedules in or to this Agreement unless otherwise specified.  All uses of the word "including" shall mean "including, without limitation" unless the context shall indicate otherwise. Unless otherwise specified, the words "hereof," "herein" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement.  Unless otherwise specified, all meanings attributed to defined terms herein shall be equally applicable to both the singular and plural forms of the terms so defined.

2. **Pledge; Grant of Security Interest**.  Borrower hereby pledges and grants to Lender, as collateral security for the prompt and complete payment and performance when due (whether at the stated maturity, by acceleration or otherwise) of the Debt, a first priority security interest in all of Borrower's right, title and interest to the following (collectively, the "**Collateral**"):

       (i)      all Pledged Interests;

       (ii)      all securities, moneys or property representing dividends or interest on any of the Pledged Interests, or representing a distribution in respect of the Pledged Interests, or resulting from a split-up, revision, reclassification or other like change of the Pledged Interests or otherwise received in exchange therefor, and any subscription warrants, rights or options issued to the holders of, or otherwise in respect of, the Pledged Interests;

       (iii)      all right, title and interest of Borrower in, to and under any policy of insurance payable by reason of loss or damage to the Pledged Interests and any other Collateral;

       (iv)      all "accounts", "general intangibles", "instruments" and "investment property" (in each case as defined in the Code) constituting or relating to the foregoing; and

       (v)      all Proceeds of any of the foregoing property of Borrower (including, without limitation, any proceeds of insurance thereon, all "accounts",

- 3 -

"general intangibles", "instruments" and "investment property", in each case as defined in the Code, constituting or relating to the foregoing).

**3.**    **Certificates.**    Concurrently with the execution and delivery of this Agreement, Borrower shall deliver to Lender each original certificate evidencing the Pledged Interests (which certificates shall constitute "security certificates" (as defined in the Code)), together with an undated stock, limited liability company membership or partnership interest power, as applicable, covering each such certificate, duly executed in blank with, if Lender so requests, signature guaranteed.

**4.**    **Representations and Warranties.**    Borrower represents and warrants as of the date hereof that:

(a)    no authorization, consent of or notice to any other Person (including, without limitation, any member, partner or creditor of Borrower or Mezzanine 1 Borrower) that has not been obtained, is required in connection with the execution, delivery, performance, validity or enforceability of this Agreement including, without limitation, the assignment and transfer by the Borrower of any of the Collateral to Lender or the subsequent transfer thereof by Lender pursuant to the terms hereof;

(b)    all of the Pledged Interests have been duly and validly issued and are fully paid and nonassessable;

(c)    the Pledged Interests constitute all the issued and outstanding equity interests in Mezzanine 1 Borrower (other than the non-economic "springing member" interest);

(d)    Borrower is the record and beneficial owner of, and has good title to, the Pledged Interests, free of any and all Liens or options in favor of, or claims of, any other Person, except the Lien created by this Agreement, and the Pledged Interests have not previously been assigned, sold, transferred, pledged or encumbered (except pursuant to this Agreement);

(e)    upon delivery to Lender of the original certificates evidencing the Pledged Interests, the Lien granted pursuant to this Agreement will constitute a valid, perfected first priority Lien on the Pledged Interests and related Proceeds, enforceable as such against all creditors of Borrower and any Persons purporting to purchase any Pledged Interests and related Proceeds from Borrower, free from any adverse claim;

(f)    upon the filing of the UCC-1 financing statements referred to in Section 5 with the Delaware Secretary of State, the Lien granted pursuant to this Agreement will constitute a valid, perfected first priority Lien on the Collateral not constituting Pledged Interests and related Proceeds in such jurisdictions, enforceable as such against all creditors of Borrower and any Persons purporting to purchase any Pledged Interests and related Proceeds from Borrower;

(g)    the principal place of business and chief executive office of Borrower is, and for the immediately preceding four (4) months (or any shorter period of its existence), has been, located at c/o World Class, 401 Congress Avenue, 33rd Floor, Austin, Texas 78701;

- 4 -

(h)    the exact name of Borrower is GVS Portfolio I B, LLC and its organizational identification number is 7156166;

(i)    Borrower is organized under the laws of the State of Delaware;

(j)    there currently exist no certificates, instruments or writings representing the Pledged Interests other than those delivered to Lender. However, to the extent that in the future there exist any such certificates, instruments or writings, Borrower shall deliver all such certificates, instruments or writings to Lender together with the undated stock, limited liability company membership or partnership interest power, as applicable, duly executed in blank with, if Lender so requests, signature guaranteed;

(k)    the Mezzanine 1 Borrower Company Agreement and the certificates evidencing the Pledged Interests each state that the Pledged Interests are "securities" governed by and within the meaning of the Uniform Commercial Code, as from time to time amended and in effect, in the jurisdiction in which Mezzanine 1 Borrower is organized; and

(l)    the Pledged Interests (i) are "securities" within the meaning of Sections 8-102(a)(15) and 8-103 of the Code, (ii) are "certificated securities" within the meaning of Section 8-102(a)(14) of the Code, (iii) are "financial assets" (within the meaning of Section 8-102(a)(9) of the Code), (iv) are not credited to a "securities account" (within the meaning of Section 8-501(a) of the Code), (v) are not dealt in or traded on a securities exchange or in a securities market, and (vi) are not "investment company securities" (within the meaning of Section 8-103 of the Code). The Mezzanine 1 Borrower Company Agreement and the certificates evidencing the Pledged Interests each state that the Pledged Interests are "securities" as such term is defined in Article 8 of the Uniform Commercial Code, as from time to time amended and in effect, in the jurisdiction in which Mezzanine 1 Borrower is organized.

5.    **Covenants.** Borrower covenants and agrees with Lender that, from and after the date of this Agreement until the Debt (exclusive of any indemnification or other obligations which are expressly stated in any of the Loan Documents to survive satisfaction of the Note) is paid in full:

(a)    **Acknowledgements of Parties.** If Borrower shall, as a result of its ownership of the Pledged Interests, become entitled to receive or shall receive any stock, limited liability company membership or partnership certificate, as applicable (including, without limitation, any certificate representing a dividend or a distribution in connection with any reclassification, increase or reduction of capital or any certificate issued in connection with any reorganization), option or rights, whether in addition to, in substitution of, as a conversion of, or in exchange for any shares of the Pledged Interests, or otherwise in respect thereof, Borrower shall accept the same as Lender's agent, hold the same in trust for Lender and deliver the same forthwith to Lender in the exact form received, duly endorsed by Borrower to Lender, if required, together with an undated stock, limited liability company membership or partnership interest power, as applicable, covering such certificate duly executed in blank and with, if Lender so requests, signature guaranteed, to be held by Lender hereunder as additional security for the Debt. Any sums paid upon or in respect of the Pledged Interests upon the liquidation or dissolution of Mezzanine 1 Borrower shall be paid over to Lender to be held by it hereunder as additional security

for the Debt, and in case any distribution of capital shall be made on or in respect of the Pledged Interests or any property shall be distributed upon or with respect to the Pledged Interests pursuant to the recapitalization or reclassification of the capital of Mezzanine 1 Borrower or pursuant to the reorganization thereof, the property so distributed shall be delivered to Lender to be held by it, subject to the terms hereof, as additional security for the Debt.  If any sums of money or property so paid or distributed in respect of the Pledged Interests shall be received by Borrower, Borrower shall deliver the same to Lender and, until such money or property is paid or delivered to Lender, hold such money or property in trust for Lender, segregated from other funds of Borrower, as additional security for the Debt. Unless an Event of Default shall have occurred and be continuing, nothing herein shall be deemed to prohibit Mezzanine 1 Borrower or Borrower from making distributions of excess cash flow to their constituent members in the ordinary course of business to the extent such distribution is not in violation of the terms and conditions of the other Loan Documents.

(b)    **Limitation on Securities.**  Without the prior written consent of Lender, Borrower shall not, directly or indirectly (i) vote to enable, or take any other action to permit, Mezzanine 1 Borrower to issue any stock, limited liability company membership or partnership interests, as applicable, or to issue any other securities convertible into or granting the right to purchase or exchange for any stock, limited liability company membership or partnership interests, as applicable, in Mezzanine 1 Borrower, or (ii) except as permitted by the Loan Agreement, sell, assign, transfer, exchange or otherwise dispose of, or grant any option with respect to, the Collateral.

(c)    **Financing Statements; Other Documents.**  At any time and from time to time, upon the written request of Lender, and at the sole expense of Borrower, Borrower shall promptly and duly give, execute, deliver file and/or record such further instruments and documents and take such further actions as Lender may reasonably request for the purposes of obtaining, creating, perfecting, validating or preserving the full benefits of this Agreement and of the rights and powers granted herein including without limitation filing UCC financing statements (and amendments of such financing statements and continuation statements), provided that the amount of the Debt shall not be increased thereby.  Borrower hereby authorizes Lender to file any such UCC financing statements (and amendments of such financing statements and continuation statements) naming Borrower as debtor and Lender as secured party and covering all personal property or all assets of Borrower, without the signature of Borrower to the extent permitted by law.  If any amount payable under or in connection with any of the Collateral shall be or become evidenced by any promissory note, other instrument or chattel paper, such note, instrument or chattel paper shall be promptly delivered to Lender, duly endorsed in a manner satisfactory to Lender, to be held as Collateral pursuant to this Agreement.

(d)    **Limitation on Liens.**  Borrower will not create, incur, authorize or permit to exist, will warrant and defend title to and ownership of the Collateral against, and will take all such other action as is necessary to remove, any Lien or claim on or to the Collateral, other than the Liens created hereby, and will defend the right, title and interest of Lender in, to and under the Collateral against the claims and demands of all Persons whomsoever.

(e)    **Further Identification of Pledged Interests.**  Borrower will furnish to Lender from time to time statements and schedules further identifying and describing

- 6 -

the Pledged Interests and other Collateral and such other reports in connection with the Pledged Interests and other Collateral as Lender may reasonably request, all in reasonable detail.

(f) **Changes in Location, Name, etc.** Borrower will not, unless (i) it shall have given thirty (30) days' prior written notice to such effect to Lender and (ii) all action necessary or advisable, in Lender's opinion, to protect and perfect the Liens and security interests intended to be created hereunder with respect to the Pledged Interests shall have been taken, (A) change the location of its chief executive office or principal place of business from that specified in Section 4(g), or (B) change its name, identity or structure, or (C) reorganize or reincorporate under the laws of another jurisdiction.

(g) **Changes to Organizational Documents.** Borrower shall not amend or modify the Organizational Documents of Mezzanine 1 Borrower in any material respect other than as permitted in accordance with the Loan Agreement.

(h) **Taxes**. Borrower shall pay, and save Lender harmless from, any and all liabilities with respect to, or resulting from any delay in paying, any and all stamp, excise, sales or other taxes which may be payable or determined to be payable with respect to any of the Collateral or in connection with any of the transactions contemplated by this Agreement.

(i) **UCC Article 8**. The Pledged Interests (i) will continue to be "securities" within the meaning of Sections 8-102(a)(15) and 8-103 of the Code, (ii) will continue to be "certificated securities" within the meaning of Section 8-102(a)(14) of the Code, (iii) will continue to be "financial assets" (within the meaning of Section 8-102(a)(9) of the Code), (iv) will not be credited to a "securities account" (within the meaning of Section 8-501(a) of the Code), (v) will not be dealt in or traded on a securities exchange or in a securities market, and (vi) will not be "investment company securities" (within the meaning of Section 8-103 of the Code). The Mezzanine 1 Borrower Company Agreement and the certificates evidencing the Pledged Interests each shall at all times state that the Pledged Interests are "securities" as such term is defined in Article 8 of the Uniform Commercial Code, as from time to time amended and in effect, in the jurisdiction in which Mezzanine 1 Borrower is organized.

6. **Intentionally omitted**.

7. **Cash Dividends; Voting Rights**. Subject to Section 4.2.19 of the Loan Agreement, the cash management provisions of the Loan Agreement and the provisions of the Cash Management Agreement, and unless an Event of Default shall have occurred and be continuing, Borrower shall be permitted to receive all stock, limited liability company membership or partnership interest distributions or cash dividends paid in the normal course of business of Mezzanine 1 Borrower and to exercise all voting and stock, limited liability company membership or partnership interests or other rights with respect to the Pledged Interests, provided that no vote shall be cast or right exercised or other action taken which, in Lender's judgment, would impair the Collateral or which would be inconsistent with or result in any violation of any provision of the Loan Agreement, the Note, this Agreement or any other Loan Documents.

- 7 -

25248112.3.BUSINESS

8.    **Rights of Lender.**

(a)    If an Event of Default shall occur and be continuing, Lender shall have the right to receive any and all income, cash dividends, distributions, proceeds or other property received or paid in respect of the Pledged Interests and make application thereof to the Debt, in such order as Lender, in its sole discretion, may elect, in accordance with the Loan Documents.  If an Event of Default shall occur and be continuing, then all such Pledged Interests at Lender's option, shall be registered in the name of Lender or its nominee (if not already so registered), and Lender or its nominee may thereafter exercise (i) all voting, stock, limited liability company membership or partnership rights, as applicable, and other rights pertaining to the Pledged Interests and (ii) any and all rights of conversion, exchange, and subscription and any other rights, privileges or options pertaining to such Pledged Interests as if it were the absolute owner thereof (including, without limitation, the right to exchange at its discretion any and all of the Pledged Interests upon the merger, consolidation, reorganization, recapitalization or other fundamental change in the organizational structure of Mezzanine 1 Borrower or upon the exercise by Borrower or Lender of any right, privilege or option pertaining to such Pledged Interests, and in connection therewith, the right to deposit and deliver any and all of the Pledged Interests with any committee, depositary, transfer agent, registrar or other designated agency upon such terms and conditions as it may determine), all without liability except to account for property actually received by it, but Lender shall have no duty to exercise any such right, privilege or option and shall not be responsible for any failure to do so or delay in so doing.

(b)    The rights of Lender under this Agreement shall not be conditioned or contingent upon the pursuit by Lender of any right or remedy against Borrower or against any other Person which may be or become liable in respect of all or any part of the Debt or against any other security therefor, guarantee thereof or right of offset with respect thereto.  Lender shall not be liable for any failure to demand, collect or realize upon all or any part of the Collateral or for any delay in doing so, nor shall it be under any obligation to sell or otherwise dispose of any Collateral upon the request of Borrower or any other Person or to take any other action whatsoever with regard to the Collateral or any part thereof.

(c)    Upon satisfaction in full of the Debt and payment of all amounts owed on the Note, Lender's rights under this Agreement shall terminate and Lender shall return the certificates representing or evidencing the Pledged Interests and shall, at Borrower's sole cost and expense, execute and deliver to Borrower UCC-3 termination statements or similar documents and agreements to terminate all of Lender's rights under this Agreement and all other Loan Documents.

(d)    Borrower also authorizes Lender, at any time and from time to time, to execute, in connection with the sale provided for in Sections 9 or 10 hereof, any endorsements, assignments or other instruments of conveyance or transfer with respect to the Collateral.

(e)    The powers conferred on Lender hereunder are solely to protect Lender's interest in the Collateral and shall not impose any duty upon Lender to exercise any such powers.  Lender shall be accountable only for amounts that it actually receives as a result of the exercise of such powers, and neither it nor any of its officers, directors, employees or Lenders shall

- 8 -

be responsible to Borrower for any act or failure to act hereunder, except for its or their gross negligence or willful misconduct.

(f)     If Borrower fails to perform or comply with any of its agreements contained herein and Lender, as provided for by the terms of this Agreement, shall itself perform or comply, or otherwise cause performance or compliance, with such agreement, the expenses of Lender incurred in connection with such performance or compliance, together with interest at the Default Rate if such expenses are not paid on demand, shall be payable by Borrower to Lender on demand and shall constitute obligations secured hereby.

9.     **Remedies.** (a) If an Event of Default shall occur and be continuing, Lender may, in addition to all other rights and remedies granted in this Agreement and in any other instrument or agreement securing, evidencing or relating to the Debt:

(i)     exercise all rights and remedies of a secured party under the Code (whether or not said Code is in effect in the jurisdiction where the rights and remedies are asserted) and such additional rights and remedies to which a secured party is entitled under the laws in effect in any jurisdiction where any rights and remedies hereunder may be asserted, including, without limitation, the right, to the maximum extent permitted by law, to exercise all voting, consensual and other powers of ownership pertaining to the Collateral as if Lender were the sole and absolute owner thereof (and Borrower agrees to take all such action as may be appropriate to give effect to such right);

(ii)     make any reasonable compromise or settlement deemed desirable with respect to any of the Collateral and may extend the time of payment, arrange for payment in installments, or otherwise modify the terms of, any of the Collateral; and

(iii)     in its name or in the name of Borrower or otherwise, demand, sue for, collect, direct payment of or receive any money or property at any time payable or receivable on account of or in exchange for any of the Collateral, but shall be under no obligation to do so.

(b)     Without limiting the generality of the foregoing, if an Event of Default shall occur and be continuing, Lender, without demand of performance or other demand, presentment, protest, advertisement or notice of any kind (except any notice required by law referred to below or otherwise required hereby) to or upon Borrower, Mezzanine 1 Borrower or any other Person (all and each of which demands, presentments, protests, advertisements and notices, or other defenses, are hereby waived to the extent permitted under applicable law), may in such circumstances forthwith collect, receive, appropriate and realize upon the Collateral, or any part thereof, and/or may forthwith sell, assign, give option or options to purchase or otherwise dispose of and deliver the Collateral or any part thereof (or contract to do any of the foregoing), in one or more parcels at public or private sale or sales, in the over-the-counter market, at any exchange, broker's board or office of Lender or elsewhere upon such terms and conditions as it may deem advisable and at such prices as it may deem best in its sole discretion, for cash or on credit or for future delivery without assumption of any credit risk.  Lender shall have the right, without notice or publication, to adjourn any public or private sale or cause the same to be adjourned from time to time by announcement at the time and place fixed for such sale, and any such sale may be made at any time or place to which the same may be adjourned without further

- 9 -

notice.  Lender shall have the right upon any such public sale or sales, and, to the extent permitted by law, upon any such private sale or sales, to purchase the whole or any part of the Collateral so sold, free of any right or equity of redemption of Borrower, which right or equity of redemption is hereby waived or released.  Lender shall apply any Proceeds from time to time held by it and the net proceeds of any such collection, recovery, receipt, appropriation, realization or sale, after deducting all reasonable costs and expenses of every kind incurred therein or incidental to the care or safekeeping of any of the Collateral or in any way relating to the Collateral or the rights of Lender hereunder, including, without limitation, reasonable attorneys' fees and disbursements, to the payment in whole or in part of the Debt, in such order as Lender may elect, and only after such application and after the payment by Lender of any other amount required by any provision of law, including, without limitation, Sections 9-610 and 9-615 of the Code, need Lender account for the surplus, if any, to Borrower.  To the extent permitted by applicable law, Borrower waives all claims, damages and demands it may acquire against Lender arising out of the exercise by Lender of any of its rights hereunder, except for any claims, damages and demands it may have against Lender arising from the willful misconduct or gross negligence of Lender or its affiliates, or any agents or employees of the foregoing.  If any notice of a proposed sale or other disposition of Collateral shall be required by law, such notice shall be deemed reasonable and proper if given at least ten (10) days before such sale or other disposition.

(c)    The rights, powers, privileges and remedies of Lender under this Agreement are cumulative and shall be in addition to all rights, powers, privileges and remedies available to Lender at law or in equity.  All such rights, powers and remedies shall be cumulative and may be exercised successively or concurrently without impairing the rights of Lender hereunder.

**10.    Private Sales.**  Borrower recognizes that Lender may be unable to effect a public sale of any or all of the Pledged Interests, by reason of certain prohibitions contained in the Securities Act of 1933, as amended, and applicable state securities laws or otherwise, and may be compelled to resort to one or more private sales thereof to a restricted group of purchasers which will be obliged to agree, among other things, to acquire such securities for their own account for investment and not with a view to the distribution or resale thereof.  Borrower acknowledges and agrees that any such private sale may result in prices and other terms less favorable to Lender than if such sale were a public sale and, notwithstanding such circumstances, agrees that any such private sale shall not be deemed to have been made in a commercially unreasonable manner solely by virtue of being a private sale.  Lender shall be under no obligation to delay a sale of any of the Pledged Interests for the period of time necessary to permit Mezzanine 1 Borrower or Borrower to register such securities for public sale under the Securities Act of 1933, as amended, or under applicable state securities laws, even if Mezzanine 1 Borrower or Borrower would agree to do so.

(a)    Borrower further shall use its best efforts to do or cause to be done all such other acts as may be reasonably necessary to make any sale or sales of all or any portion of the Pledged Interests pursuant to this Section 10 valid and binding and in compliance with any and all other requirements of applicable law.  Borrower further agrees that a breach of any of the covenants contained in this Section 10 will cause irreparable injury to Lender, that Lender has no adequate remedy at law in respect of such breach and, as a consequence, that each and every covenant contained in this Section 10 shall be specifically enforceable against Borrower, and Borrower hereby waives and agrees not to assert any defenses against an action for specific

- 10 -

performance of such covenants except for a defense that no Event of Default has occurred under the Loan Agreement.

(b)    Lender shall not incur any liability as a result of the sale of any Collateral, or any part thereof, at any private sale conducted in a commercially reasonable manner, it being agreed that some or all of the Collateral is or may be of one or more types that threaten to decline speedily in value and that are not customarily sold in a recognized market. The Borrower hereby waives any claims against Lender arising by reason of the fact that the price at which any of the Collateral may have been sold at such a private sale was less than the price which might have been obtained at a public sale or was less than the aggregate amount of the Debt, even if Lender accepts the first offer received and does not offer any Collateral to more than one offeree, provided that Lender has acted in a commercially reasonable manner in conducting such private sale.

(c)    The Code states that the Lender is able to purchase the Pledged Interests only if they are sold at a public sale. Lender has advised Borrower that SEC staff personnel have issued various No-Action Letters describing procedures which, in the view of the SEC staff, permit a foreclosure sale of securities to occur in a manner that is public for purposes of Article 9 of the Code, yet not public for purposes of Section 4(2) of the Securities Act of 1933. The Code permits Borrower to agree on the standards for determining whether Lender has complied with its obligations under Article 9 of the Code. Pursuant to the Code, Borrower specifically agrees (x) that it shall not raise any objection to Lender's purchase of the Pledged Interests (through bidding on the obligations or otherwise) and (y) that a foreclosure sale conducted in conformity with the principles set forth in the No-Action Letters (i) shall be considered to be a "public" sale for purposes of the Code; (ii) will be considered commercially reasonable notwithstanding that Lender, has not registered or sought to register the Pledged Interests under the Securities Laws, even if Borrower or Mezzanine 1 Borrower agrees to pay all costs of the registration process; and (iii) shall be considered to be commercially reasonable notwithstanding that Lender purchases the Pledged Interests at such a sale.

(d)    Borrower agrees that Lender shall not have any general duty or obligation to make any effort to obtain or pay any particular price for any Pledged Interests sold by Lender pursuant to this Agreement. Lender, may, in its sole discretion, among other things, accept the first offer received, or decide to approach or not to approach any potential purchasers. Without in any way limiting Lender's right to conduct a foreclosure sale in any manner which is considered commercially reasonable, Borrower hereby agrees that any foreclosure sale conducted in accordance with the following provisions shall be considered a commercially reasonable sale and hereby irrevocably waives any right to contest any such sale:

(i)    Lender conducts the foreclosure sale in the State of New York,

(ii)    The foreclosure sale is conducted in accordance with the laws of the State of New York,

(iii)    Not more than ten (10) days before, and not less than five (5) days in advance of the foreclosure sale, Lender notifies Borrower at the address set forth herein of the time and place of such foreclosure sale,

(iv)    The foreclosure sale is conducted by an auctioneer licensed in the State of New York and is conducted in front of the New York Supreme Court located in New York City or such other New York State Court having jurisdiction over the Collateral on any Business Day between the hours of 9 a.m. and 5 p.m.,

(v)    The notice of the date, time and location of the foreclosure sale is published in the New York Times or Wall Street Journal (or such other newspaper widely circulated in New York, New York) for seven (7) consecutive days prior to the date of the foreclosure sale, and

(vi)    Lender sends notification of the foreclosure sale to all secured parties identified as a result of a search of the UCC financings statements in the filing offices located in the State of Delaware conducted not later than twenty (20) days and not earlier than thirty (30) days before such notification date.

(e)    Lender shall not incur any liability as a result of the sale of any Collateral, or any part thereof, at any private sale conducted in a commercially reasonable manner, it being agreed that some or all of the Collateral is or may be of one or more types that threaten to decline speedily in value and that are not customarily sold in a recognized market. Borrower hereby waives any claims against Lender arising by reason of the fact that the price at which any of the Collateral may have been sold at such a private sale was less than the price which might have been obtained at a public sale or was less than the aggregate amount of the Debt, even if Lender accepts the first offer received and does not offer any Collateral to more than one offeree, provided that Lender has acted in a commercially reasonable manner in conducting such private sale.

**11.    Limitation on Duties Regarding Collateral.** Lender's sole duty with respect to the custody, safekeeping and physical preservation of the Collateral in its possession, under Section 9-207 of the Code or otherwise, shall be to deal with it in the same manner as Lender deals with similar securities and property for its own account.  Neither Lender nor any of its directors, officers, employees or agents shall be liable for failure to demand, collect or realize upon any of the Collateral or for any delay in doing so or shall be under any obligation to sell or otherwise dispose of any Collateral upon the request of Borrower or otherwise.

**12.    Attorney-in-Fact.** Without limiting any rights or powers granted by this Agreement to Lender, Lender is hereby appointed, which appointment as attorney-in-fact is irrevocable and coupled with an interest, the attorney-in-fact of Borrower, exercisable during any period when an Event of Default exists, for the purpose of carrying out the provisions of this Agreement and taking any action and executing any instruments which Lender may deem necessary or advisable to accomplish the purposes hereof including, without limitation:

(a)    to ask, demand, collect, sue for, recover, compromise, receive and give acquittance and receipts for moneys due and to become due under or in respect of any of the Collateral;

(b)    to receive, endorse and collect any drafts or other instruments, documents and chattel paper in connection with clause (a) above;

(c)    to file any claims or take any action or institute any proceedings that the Lender may deem necessary or desirable for the collection of any of the Collateral or otherwise to enforce the rights of Lender, with respect to any of the Collateral; and

(d)    to execute, in connection with the sale provided for in Section 9 or 10, any endorsement, assignments, or other instruments of conveyance or transfer with respect to the Collateral, including without limitation, to transfer or cause the transfer of the Collateral, or any part thereof, on the books of Mezzanine 1 Borrower or other entity issuing such Collateral, to Lender or any nominee.

If so requested by Lender, Borrower shall ratify and confirm any such sale or transfer by executing and delivering to Lender at Borrower's expense all proper deeds, bills of sale, instruments of assignment, conveyance of transfer and releases as may be designated in any such request.

**13.    Additional Covenants of Borrower Relating to Affirmative Covenants of Mezzanine 1 Borrower.**  Borrower covenants and agrees with Lender that, from and after the date of this Agreement until the Debt (exclusive of any indemnification or other obligations which are expressly stated in any of the Loan Documents to survive satisfaction of the Note) is paid in full, (i) Borrower shall take any and all actions either necessary or reasonably requested by Lender to ensure complete compliance with Section 4.1 of the Loan Agreement, (ii) Borrower shall cause Mezzanine 1 Borrower to take such actions as are required by or to comply with the terms of the Mezzanine 1 Loan Documents, and shall not take any actions that violate any such documents and (iii) Borrower shall cause Mezzanine 1 Borrower to not apply amounts disbursed to Mezzanine 1 Borrower pursuant to the requirements of the Mezzanine 1 Loan Documents in a manner contrary to the requirements of the Mezzanine 1 Loan Documents.

**14.    Additional Covenants of Borrower Relating to Negative Covenants of Mezzanine 1 Borrower**.  Borrower covenants and agrees with Lender that, from and after the date of this Agreement until the Debt (exclusive of any indemnification or other obligations which are expressly stated in any of the Loan Documents to survive satisfaction of the Note) is paid in full, Borrower shall take, or cause to be taken, any action to ensure compliance with Section 4.2 of the Loan Agreement.

**15.    Non-Recourse.**  The provisions of Section 11.22 of the Loan Agreement are hereby incorporated by reference into this Agreement as to the liability of Borrower hereunder to the same extent and with the same force as if fully set forth herein.

**16.    Indemnity.**  Borrower agrees that the terms and provisions of Section 11.13 of the Loan Agreement are hereby incorporated by reference into this Agreement to the same extent and with the same force as if fully set forth herein.

**17.    Miscellaneous.**

(a)    **Severability.**  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

(b)    **Headings.**    The headings used in this Agreement are for convenience of reference only and are not to affect the construction hereof or be taken into consideration in the interpretation hereof.  The Recitals to this Agreement are hereby incorporated by reference as if originally set forth in full herein.

(c)    **No Waiver; Cumulative Remedies.**  Lender shall not by any act (except by a written instrument pursuant to Section 17(d)), delay, indulgence, omission or otherwise be deemed to have waived any right or remedy hereunder or to have acquiesced in any default or in any breach of any of the terms and conditions hereof.  No failure to exercise, nor any delay in exercising, on the part of Lender, any right, power or privilege hereunder shall operate as a waiver thereof.  No single or partial exercise of any right, power or privilege hereunder shall preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  A waiver by Lender of any right or remedy hereunder on any one occasion shall not be construed as a bar to any right or remedy which Lender would otherwise have on any future occasion.  The rights, remedies, powers and privileges herein provided are cumulative, may be exercised singly or concurrently and are not exclusive of any rights, remedies, powers or privileges provided by law.

(d)    **Waivers and Amendments; Successors and Assigns.**  None of the terms or provisions of this Agreement may be waived, amended, or otherwise modified except by a written instrument executed by the party against which enforcement of such waiver, amendment, or modification is sought.  This Agreement shall be binding upon and shall inure to the benefit of Borrower and the respective successors and assigns of Borrower and shall inure to the benefit of Lender and its successors and assigns; provided Borrower shall not have any right to assign its rights hereunder.  The rights of Lender under this Agreement shall automatically be transferred to any permitted transferee to which Lender transfers the Note and Loan Agreement.

(e)    **Notices.**  Notices by Lender to Borrower or Mezzanine 1 Borrower to be effective shall be in writing (including by facsimile transmission), addressed or transmitted to Borrower or Mezzanine 1 Borrower at the address or facsimile number of Borrower set forth in the Loan Agreement, and shall be deemed to have been duly given or made in accordance with the terms and provisions of Section 11.6 of the Loan Agreement.

(f)    **Governing Law.**

(i)    **THIS AGREEMENT WAS NEGOTIATED IN THE STATE OF NEW YORK, AND MADE BY BORROWER AND ACCEPTED BY LENDER IN THE STATE OF NEW YORK, AND THE PROCEEDS OF THE NOTE SECURED HEREBY WERE DISBURSED FROM THE STATE OF NEW YORK, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE**

- 14 -

UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS AGREEMENT AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICT LAWS) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA. TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS AGREEMENT AND THE NOTE, AND THIS AGREEMENT AND THE NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK PURSUANT TO SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW.

(ii)    ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST LENDER OR BORROWER ARISING OUT OF OR RELATING TO THIS AGREEMENT MAY AT LENDER'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF NEW YORK, COUNTY OF NEW YORK, PURSUANT TO SECTION 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, AND BORROWER WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND BORROWER HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING. BORROWER DOES HEREBY DESIGNATE AND APPOINT:

GENERAL COUNSEL
WORLD CLASS GLOBAL BUSINESS SERVICES
767 FIFTH AVENUE, 16TH FLOOR
NEW YORK, NEW YORK 10153

AS ITS AUTHORIZED AGENT TO ACCEPT AND ACKNOWLEDGE ON ITS BEHALF SERVICE OF ANY AND ALL PROCESS WHICH MAY BE SERVED IN ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY FEDERAL OR STATE COURT IN NEW YORK, NEW YORK, AND AGREES THAT SERVICE OF PROCESS UPON SAID AGENT AT SAID ADDRESS AND WRITTEN NOTICE OF SAID SERVICE MAILED OR DELIVERED TO BORROWER IN THE MANNER PROVIDED HEREIN SHALL BE DEEMED IN EVERY RESPECT EFFECTIVE SERVICE OF PROCESS UPON BORROWER IN ANY SUCH SUIT, ACTION OR PROCEEDING IN THE STATE OF NEW YORK. BORROWER (I) SHALL GIVE PROMPT NOTICE TO LENDER OF ANY CHANGED ADDRESS OF ITS AUTHORIZED AGENT HEREUNDER, (II) MAY AT ANY TIME AND FROM TIME TO TIME DESIGNATE A SUBSTITUTE AUTHORIZED

- 15 -

**AGENT WITH AN OFFICE IN NEW YORK, NEW YORK (WHICH SUBSTITUTE AGENT AND OFFICE SHALL BE DESIGNATED AS THE PERSON AND ADDRESS FOR SERVICE OF PROCESS), AND (III) SHALL PROMPTLY DESIGNATE SUCH A SUBSTITUTE IF ITS AUTHORIZED AGENT CEASES TO HAVE AN OFFICE IN NEW YORK, NEW YORK OR IS DISSOLVED WITHOUT LEAVING A SUCCESSOR.**

(g)    **Agents.**  Lender may employ agents and attorneys-in-fact in connection herewith and shall not be responsible for their actions except for the gross negligence or willful misconduct of any such agents or attorneys-in-fact selected by it in good faith.

(h)    **Irrevocable Authorization and Instruction to Mezzanine 1 Borrower.**  Borrower hereby authorizes and instructs Mezzanine 1 Borrower and any servicer of the Loan to comply with any instruction received by it from Lender in writing that (i) states that an Event of Default has occurred and is continuing and (ii) is otherwise in accordance with the terms of this Agreement, without any other or further instructions from Borrower, and Borrower agrees that Mezzanine 1 Borrower and any servicer shall be fully protected in so complying.

(i)    **Counterparts.**  This Agreement may be executed in any number of counterparts and all the counterparts taken together shall be deemed to constitute one and the same instrument.

(j)    **WAIVER OF JURY TRIAL.  BORROWER AND LENDER EACH HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS AGREEMENT OR THE OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER AND LENDER, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.  EACH PARTY IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER.**

(k)    **No Special Damages.**  No claim may be made by Borrower against Lender, its affiliates and its respective directors, officers, employees, or attorneys for any special, indirect or consequential damages ("**Special Damages**") in respect of any breach or wrongful conduct (whether the claim therefor is based on contract, tort or duty imposed by law) in connection with, arising out of, or in any way related to the transactions contemplated or relationship established by this Agreement, or any act, omission or event occurring in connection herewith or therewith; and to the fullest extent permitted by law Borrower hereby waives, releases and agrees not to sue upon any such claim for Special Damages, whether or not accrued and whether or not known or suspected to exist in its favor.

(l)    **Acknowledgement and Consent**.  Borrower shall cause Mezzanine 1 Borrower to execute and deliver to Lender an Acknowledgement and Consent with respect to

- 16 -

this Agreement in the form of <u>Exhibit A</u> attached hereto, as applicable, in connection with the execution and delivery of this Agreement.

(m)    **Irrevocable Proxy**.    Solely with respect to Article 8 Matters, Borrower hereby irrevocably grants and appoints Lender, from the date of this Agreement until the termination of this Agreement in accordance with its terms, as such Borrower's true and lawful proxy, for and in Borrower's name, place and stead to vote the Pledged Interests, whether directly or indirectly, beneficially or of record, now owned or hereafter acquired, with respect to such Article 8 Matters.  The proxy granted and appointed in this <u>Section 17(m)</u> shall include the right to sign Borrower's name (as owner of Mezzanine 1 Borrower) to any consent, certificate or other document relating to an Article 8 Matter and the Pledged Interests that applicable law may permit or require, to cause the Pledged Interests to be voted in accordance with the preceding sentence. Borrower hereby represents and warrants that there are no other proxies and powers of attorney with respect to any Article 8 Matter that such Borrower may have granted or appointed.  Borrower shall not give a subsequent proxy or power of attorney or enter into any other voting agreement with respect to the Pledged Interests with respect to any Article 8 Matter and any attempt to do so with respect to any Article 8 Matter will be void and of no effect.  The proxies and powers granted by Borrower pursuant to this Agreement are coupled with an interest and are given to secure the performance of Borrower's obligations.

(n)    **Joint and Several Liability.**  If Borrower consists of more than one person or party, the obligations and liabilities of each such person or party hereunder shall be joint and several.

**[SIGNATURES COMMENCE ON THE FOLLOWING PAGE]**

25248112.3.BUSINESS

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized officers as of the date set forth above.

**BORROWER:**

**GVS PORTFOLIO I B, LLC**, a Delaware limited liability company

By: _____
Name: Natin Paul
Title: President

**[SIGNATURES CONTINUE ON FOLLOWING PAGE]**

**LENDER:**

**UBS AG**

By: _____
Name:  Michael Mills
Title:  Associate Director

By: _____
Name:  Kathleen Donovan
Title:  Managing Director

**SCHEDULE I**
**To Pledge Agreement**

**MORTGAGE BORROWER**

1.    GVS Colorado Holdings I, LLC

2.    GVS Illinois Holdings I, LLC

3.    GVS Indiana Holdings I, LLC

4.    GVS Missouri Holdings I, LLC

5.    WC Mississippi Storage Portfolio I, LLC

6.    GVS Nevada Holdings I, LLC

7.    GVS New York Holdings I, LLC

8.    GVS Ohio Holdings I, LLC

9.    GVS Ohio Holdings II, LLC

10.    GVS Tennessee Holdings I, LLC

11.    GVS Texas Holdings I, LLC

12.    GVS Texas Holdings II, LLC

25248112.3.BUSINESS

**SCHEDULE II**
**To Pledge Agreement**

**DESCRIPTION OF PLEDGED MEMBERSHIP**
**INTERESTS**

| Issuer | Owner | Class of Membership Interest | Percentage of Membership Interests |
| --- | --- | --- | --- |
| GVS Portfolio I, LLC | GVS Portfolio I B, LLC | LLC | 100% |

SCH. II-1

**EXHIBIT A**

**FORM OF ACKNOWLEDGMENT AND CONSENT**

   Mezzanine 1 Borrower hereby acknowledges receipt of a copy of that certain Pledge and Security Agreement, dated as of the date hereof, by and between Borrower and Lender (the "Pledge Agreement") and agrees that Borrower is bound thereby. Mezzanine 1 Borrower agrees to notify Lender promptly in writing of the occurrence of any of the events described in Section 5(a) of the Pledge Agreement. Terms used herein but not otherwise defined herein shall have the respective meanings ascribed to them in the Pledge Agreement.

Dated: November _____, 2018

        **MEZZANINE 1 BORROWER:**

        **GVS PORTFOLIO I, LLC**, a Delaware
        limited liability company

        By: _____
          Name:
          Title:

EXH. A-1

**EXHIBIT B**

**FORM OF INSTRUCTION TO REGISTER PLEDGE**

November ___, 2018

To:     GVS PORTFOLIO I, LLC

In accordance with the requirements of that certain Pledge and Security Agreement (Mezzanine 2 Loan), dated as of the date hereof (as amended, supplemented or otherwise modified from time to time, the "**Pledge Agreement**"), between **UBS AG, BY AND THROUGH ITS BRANCH OFFICE LOCATED AT 1285 AVENUE OF THE AMERICAS, NEW YORK, NEW YORK** ("Lender") and **GVS PORTFOLIO I B, LLC**, a Delaware limited liability company ("**Borrower**") (defined terms used herein as therein defined), you are hereby instructed, notwithstanding your and our understanding that the membership interest described below is a security under the Uniform Commercial Code, as a precaution in the event that such interest was nevertheless held not to be a security and to better assure the perfection of the security interest of Lender in such interests, to register the pledge of the following interests in the name of Lender as follows:

The 100% membership interest of the undersigned in GVS PORTFOLIO I, LLC, a Delaware limited liability company ("**Issuer**") as listed on Schedule II to the Pledge Agreement, including without limitation, all of the following property now owned or at any time hereafter acquired by Borrower or in which Borrower now has or at any time in the future may acquire any right, title or interest:

(a)     all additional membership interests of, or other equity interests in, the Issuer and options, warrants, and other rights hereafter acquired by Borrower in respect of such membership interests or other equity interests (whether in connection with any capital increase, recapitalization, reclassification, or reorganization of Issuer or otherwise) (all such membership interests and other equity interests, including those described on Schedule II to the Pledge Agreement, and all such options, warrants and other rights being hereinafter collectively referred to as the "**Pledged Interests**");

(b)     all certificates, instruments, or other writings representing or evidencing the Pledged Interests, and all accounts and general intangibles arising out of, or in connection with, the Pledged Interests;

(c)     any and all moneys or property due and to become due to Borrower now or in the future in respect of the Pledged Interests, or to which Borrower may now or in the future be entitled to in its capacity as a member of Issuer, whether by way of a dividend, distribution, return of capital, or otherwise;

EXH. B-1

(d)     all other claims which Borrower now has or may in the future acquire in its capacity as a shareholder of Issuer against Issuer and its property;

(e)     all rights of Borrower under the Mezzanine 1 Borrower Company Agreement (and all other agreements, if any, to which Borrower is a party from time to time which relate to its ownership of the Pledged Interests), including, without limitation, all voting and consent rights of Borrower arising thereunder or otherwise in connection with Borrower's ownership of the Pledged Interests; and

(f)     to the extent not otherwise included, all Proceeds of any or all of the foregoing.

You are hereby further authorized and instructed to execute and deliver to Lender a Confirmation Statement and Instruction Agreement, substantially in the form of Exhibit C to the Pledge Agreement and, to the extent provided more fully therein, to comply with the instructions of Lender in respect of the Collateral without further consent of, or notice to, the undersigned. Notwithstanding anything in this paragraph, this instruction shall not be construed as expanding the rights of Lender to give instructions with respect to the Collateral beyond such rights set forth in the Pledge Agreement.

Very truly yours,

**BORROWER:**                          **LENDER:**

**GVS PORTFOLIO I, LLC**, a Delaware      **UBS AG**
limited liability company

By: _____      By: _____
    Name:                                   Name:
    Title:                                  Title:

                                      By: _____
                                          Name:
                                          Title:

EXH. B-2

**EXHIBIT C**

**FORM OF CONFIRMATION STATEMENT AND INSTRUCTION AGREEMENT**

November ____, 2018

To:    UBS AG, BY AND THROUGH ITS BRANCH OFFICE AT 1285 AVENUE OF THE AMERICAS, NEW YORK, NEW YORK

Pursuant to the requirements of that certain Pledge and Security Agreement (Mezzanine 2 Loan), dated as of the date hereof (as amended, supplements or otherwise modified from time to time, the "**Pledge Agreement**"), between **UBS AG, BY AND THROUGH ITS BRANCH OFFICE AT 1285 AVENUE OF THE AMERICAS, NEW YORK, NEW YORK** ("**Lender**") and **GVS PORTFOLIO I B, LLC**, a Delaware limited liability company ("**Borrower**") (defined terms used herein as therein defined), this Confirmation Statement and Instruction Agreement relates to those membership interests (the "**Pledged Interests**"), as further described on Schedule I attached hereto, issued by **GVS PORTFOLIO I, LLC**, a Delaware limited liability company ("**Issuer**").

The Pledged Interests are not (i) "investment company securities" (within the meaning of Section 8-103 of the Code) or (ii) dealt in or traded on securities exchanges or in securities markets.

The Pledged Interests are "securities" (within the meaning of Sections 8-102(a)(15) and 8-103 of the Code), and therefore, for purposes of perfecting the security interest of Lender therein, Issuer agrees as follows:

On the date hereof, the registered owner of 100% of GVS PORTFOLIO I, LLC is:

GVS PORTFOLIO I B, LLC

The registered pledgee of the Pledged Interests is:

UBS AG, BY AND THROUGH ITS BRANCH OFFICE AT 1285 AVENUE OF THE AMERICAS, NEW YORK, NEW YORK
Taxpayer I.D. Number:  13-2929607

There are no liens of Issuer on the Pledged Interests or any adverse claims thereto for which Issuer has a duty under Section 8-403 of the Code.  Issuer has by book-entry registered the Pledged Interests in the name of the registered pledgee on or before November ____, 2018.  No other pledge is currently registered on the books and records of Issuer with respect to the Pledged Interests.

EXH. C-1

Until the Debt is paid in full (exclusive of provisions which shall survive full payment), Issuer agrees to: (i) comply with the instructions of Lender, without any further consent from Borrower or any other Person, in respect of the Pledged Interests; and (ii) disregard any request made by Borrower or any other person which contravenes the instructions of Lender with respect to the Pledged Interests. Notwithstanding anything in this paragraph, this Confirmation Statement and Instruction Agreement shall not be construed as expanding the rights of Lender to give instructions with respect to the Collateral beyond such rights set forth in the Pledge Agreement.

EXH. C-2

Dated:  November _____, 2018

Very truly yours,

**GVS PORTFOLIO I, LLC**, a Delaware
limited liability company

By: _____
      Name:
      Title:

**ACKNOWLEDGED AND AGREED:**

**LENDER:**

**UBS AG**

By: _____
      Name:
      Title:

By: _____
      Name:
      Title:

**BORROWER:**

**GVS PORTFOLIO I B, LLC**

By: _____
      Name:
      Title:

EXH. C-1

## SCHEDULE I

### DESCRIPTION OF PLEDGED MEMBERSHIP INTERESTS

| Issuer | Owner | Class of Membership Interest | Percentage of Membership Interests |
|---|---|---|---|
| GVS Portfolio I, LLC | GVS Portfolio I B, LLC | LLC | 100% |

EXH. C-1

**EXHIBIT D**

**FORM OF CERTIFICATE FOR**
**LIMITED LIABILITY COMPANY INTEREST**
**OF [_____] LLC**

This Certificate has not been and will not be registered under the Securities Act of 1933 or under the securities or blue sky laws of any state.  The holder of this Certificate, by its acceptance hereof, represents that it is acquiring this security for investment and not with a view to any sale or distribution hereof.

**Certificate Number __**                                                    **___% Limited Liability Company Interest**

[_____] LLC, a [_____] limited liability company (the **"Company"**), hereby certifies that [_____] (together with any assignee of this Certificate, the **"Holder"**) is the registered owner of all of the limited liability company interests in the Company (the **"Shares"**).  The rights, powers, preferences, restrictions and limitations of the Shares are set forth in, and this Certificate and the Shares represented hereby are issued and shall in all respects be subject to the terms and provisions of, the [Limited Liability Company Operating Agreement] of the Company dated as of [_____], as the same may be amended or restated from time to time (the **"Limited Liability Company Agreement"**).  **THE TRANSFER OF THIS CERTIFICATE AND THE SHARES REPRESENTED HEREBY IS RESTRICTED AS DESCRIBED IN THE LIMITED LIABILITY COMPANY AGREEMENT.**  By acceptance of this Certificate, and as a condition to being entitled to any rights and/or benefits with respect to the Limited Liability Company Interest evidenced hereby, the Holder is deemed to have agreed to comply with and be bound by all the terms and conditions of the Limited Liability Company Agreement.  The Company will furnish a copy of the Limited Liability Company Agreement to the Holder without charge upon written request to the Company at its principal place of business.  This Certificate evidences an interest in [_____-].

The Company maintains books for the purpose of registering the transfer of Shares.

Each limited liability company interest in the Company shall constitute a "security" within the meaning of, and governed by, (i) Article 8 of the Uniform Commercial Code (including Section 8-102(a)(15) thereof) as in effect from time to time in the State of New York, and (ii) Article 8 of the Uniform Commercial Code of any other applicable jurisdiction that now or hereafter substantially includes the 1994 revisions to Article 8 thereof as adopted by the American Law Institute and the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association on February 14, 1995.

This Certificate shall be governed by and construed in accordance with the laws of the State of [_____] without regard to principles of conflicts of laws.

IN WITNESS WHEREOF, the Company has caused this Certificate to be executed as of the date set forth below.

[_____]

Dated: _____            By: _____
                                                    Name:
                                                    Title:

EXH. D-1

**(REVERSE SIDE OF CERTIFICATE)**

**FOR LIMITED LIABILITY COMPANY INTEREST OF**

[_____]

Limited Liability Company Interest Power

FOR                                                                        VALUE
RECEIVED,_____

Please insert social security or other
Identifying Number of Assignee

hereby sells, assigns and transfers unto         _____

a ____ % limited liability company interest in [_____], a Delaware limited liability company, standing in our name in the Limited Liability Company Operating Agreement of said limited liability company and do hereby irrevocably constitute and appoint [_____] attorney to transfer the said limited liability company interest on the books of said limited liability company with full power of substitution in the premises.

Dated: _____

By:_____
    Name:
    Title:

In presence of

_____

EXH. D-2