# Exhibit 22

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART IAS MOTION 48EFM

-----------------------------------------------------------------X

GVS PORTFOLIO 1 B, LLC,

                     Plaintiff,

- v -

TEACHERS INSURANCE ANNUITY ASSOCIATION OF AMERICA,

                     Defendant.

-----------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 654095/2020 |
| MOTION DATE | N/A |
| MOTION SEQ. NO. | 003 |

**DECISION + ORDER ON MOTION**

HON. ANDREA MASLEY:

The following e-filed documents, listed by NYSCEF document number (Motion 003) 124, 125, 126, 127, 128, 129, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 163, 164, 165, 166, 167, 168, 169, 170
were read on this motion to/for                  INJUNCTION/RESTRAINING ORDER    .

Upon the foregoing documents, it is

Plaintiff GVS Portfolio I B, LLC's (GVS) motion for a preliminary injunction adjourning the March 10, 2021 sale to June 8, 2021 is denied for failure to establish a likelihood of success that the March 10, 2021 sale is not commercially reasonable.

GVS moves by Order to Show Cause, pursuant to CPLR 6301, 6311 and UCC §9-625(a), for a preliminary injunction (1) enjoining the March 10, 2021 auction sale of GVS's controlling interest in GVS Portfolio I, LLC, the indirect owner of 64 self-storage facilities located in ten states and (2) delaying the sale until June 8, 2021 or thereafter. On March 9, 2021, the court issued a TRO enjoining the sale and subsequently heard argument on the preliminary injunction on March 19, 2021. (NYSCEF 129, Order to Show Cause; NYSCEF 168, Interim Order [seq. 003].) The court issued its decision on the record on March 19, 2021 and supplements that decision here.

654095/2020   GVS PORTFOLIO 1 B, LLC vs. TEACHERS INSURANCE ANNUITY   Page 1 of 9
Motion No. 003

1 of 9

On November 30, 2018, UBS AG made three loans to GVS related to the GVS properties at issue here: a mortgage ($110 million) and two mezzanine loans. (NYSCEF 1, Complaint ¶¶6, 7.) The properties securing the loans were acquired over a ten-year period for $300 million. (NYSCEF 3, Stoler[1] aff. ¶24.) This action involves the second mezzanine loan for $82 million (Loan). Defendant Teachers Insurance Annuity Association of America (TIAA) acquired the Loan in November 2018. (NYSCEF 58, Miculis[2] aff. ¶3.) As of December 1, 2019, the properties appraised for $393.6 million. (NYSCEF 117, Newmark Appraisal at 2 [TIAA's Appraiser].) GVS has been in default on the Loan for sixteen months. (NYSCEF 58, Miculis aff. ¶10.)

Initially, this court found TIAA's September 3, 2020 sale commercially unreasonable for a variety of reasons, including that it was scheduled for the Friday before Labor Day during a pandemic, without any published safety measures, for which the earliest published notice was July 29, 2020 in the New York Times. (NYSCEF 108, Sept. 18, 2020 Decision and Order; NYSCEF 106, Aug. 31, 2020 Transcript on TRO, 10:3-16; NYSCEF 110, Sept. 18, 2020 Transcript on PI.) Subsequently, the parties agreed to the terms of sale by virtual auction and to the language in the notice of sale itself (Terms of Sale); the court set the date of sale for March 10, 2021. (NYSCEF 112, Stipulation; NYSCEF 113, UCC Public Notice; NYSCEF 120, Supplemental Order.)[3]

---

[1] Jeremy Stoler is "Executive Vice President & Head of Capital Markets" for an affiliate of GVS. (NYSCEF 2, Stoler aff. ¶1.)
[2] Christopher Miculis is "Managing Director, Head of Asset Management, Debt – Americas, of Nuveen Real Estate", a subsidiary of TIAA. (NYSCEF 58, Miculis aff. ¶1.)
[3] Although neither party put these documents before the court on this motion, both parties reference these documents, and the court considered them in rendering this decision.

654095/2020   GVS PORTFOLIO 1 B, LLC vs. TEACHERS INSURANCE ANNUITY
Motion No. 003
Page 2 of 9

2 of 9

At issue here is the provision in the Terms of Sale that the "Secured Party shall provide Debtor at least five (5) business days' notice prior to making any such amendment, modification, supplementation or other change to the Terms of Sale." (NYSCEF 115, Terms of Sale ¶7.) The last day for a bidder to register was February 24, 2021. (*Id*. ¶3.) Eight bidders submitted qualified participation statements. (NYSCEF 151, Blye aff. ¶9.) GVS did not apply to bid. (NYSCEF 156, Rosenberg[4] aff. ¶29.)

Since the parties agreed to the Terms of Sale on October 5, 2020, two significant events have occurred. First, beginning February 12, 2021,[5] Texas suffered unprecedented severe winter conditions (Storm); more than half of the 64 storage facilities are located in Texas. (NYSCEF 150, Paul[6] aff. ¶2.) The Storm caused significant destruction, utilities failures, power outages, and water and food shortages. (*Id.*) According to GVS, 31 locations were without electricity, 18 locations had plumbing lines freeze and burst, causing property damage, and two leasing offices were flooded requiring demolition. (*Id*. ¶3.) TIAA notes that GVS never gave it notice of such property damage. (NYSCEF 151, Blye aff. ¶16.) GVS also claims that, because of the

---

[4] Brett Rosenberg is the Managing Director of Jones Lang LaSalle Americas, Inc. (JLL) engaged by TIAA to market and sell the properties. (NYSCEF 156, Rosenberg aff. ¶¶1, 2.)

[5] The court takes judicial notice of the Texas Governor's February 12, 2021 disaster declaration in response to severe winter weather. (https://gov.texas.gov/news/post/governor-abbott-issues-disaster-declaration-in-response-to-severe-winter-weather-in-texas) and renewed March 15, 2021 declaration (https://gov.texas.gov/news/post/governor-abbott-renews-winter-storm-disaster-declaration.)

[6] Natin Paul is President of GVS. (NYSCEF 150, Paul aff. ¶1.)

654095/2020   GVS PORTFOLIO 1 B, LLC vs. TEACHERS INSURANCE ANNUITY
Motion No.  003
Page 3 of 9

3 of 9

Storm, it was unable to become an approved bidder as the weather event interfered with GVS's financing discussions. (NYSCEF 150, Paul aff. ¶5).[7]

GVS asserts that potential bidders were prevented from inspecting the property (*Id*. ¶4) and fears that the collateral will be sold at a deep discount as a result of the damaged property. (*Id*. ¶5.) However, GVS asserts that one bidder visited all 22 properties in the Houston area, and TIAA asserts that only two bidders requested to visit properties and subsequently made those visits. (*Id*. ¶6; NYSCEF 156, Rosenberg aff. ¶¶24-27; NYSCEF 151, Blye aff. ¶¶10-15.) Accordingly, GVS's fear is contradicted by the facts before the court.

Second, on March 8, 2021, two days before the sale, TIAA sold the Loan to RREFIII Storage LLC (RREF) without five days' notice to GVS.[8] (NYSCEFF 126, Scharf aff. ¶5.) TIAA argues that the owner of the Loan is not a Term of Sale. GVS insists that having a competitor in the storage industry as the seller, instead of TIAA, rigs the sale and will suppress bidding. Like TIAA, RREF has the option to credit bid up to the amount of the total due.

For the reasons stated on the record on March 19, 2021, the court rejected GVS's arguments in support of its second request for a preliminary injunction enjoining

---

[7] The court notes that there are no dates in the Paul affidavit and no photos of alleged damage even though Paul was in Texas when he executed his two affidavits on March 9 and 15, 2021, respectively. (NYSCEF 125; NYSCEF 150.) Likewise, Paul fails to explain how the February 2021 Storm prevented GVS from securing financing and applying to become a bidder; GVS has known of the requirements and deadlines since October 5, 2020. (NYSCEF 115, Stipulation.) GVS cannot seek a stay, motivated by becoming a qualified bidder, after failing to do so within the deadlines set by the Terms of Sale to which it agreed.

[8] On March 10, 2021, TIAA moved by notice of motion (004) to substitute RREF III Storage LLC for TIAA.

654095/2020   GVS PORTFOLIO 1 B, LLC vs. TEACHERS INSURANCE ANNUITY
Motion No. 003
Page 4 of 9

4 of 9

TIAA's UCC sale. These reasons include: (1) Texas anti-gathering restrictions do not bar this virtual sale conducted from New York; (2) some Texas anti-gathering restrictions have expired; (3) the loan agreement allows for the sale of the Loan (NYSCEF 59, Loan Agreement §9.1[a]); and (4) the two bidders who wished to inspect the properties did so; none of the other bidders requested inspections.

Moreover, GVS failed to support its theory of price depression, caused by the Storm and resulting damage with anything other than attorney affirmations. Likewise, GVS's assertion of extensive property damage depressing the price is not supported with any evidence such as photos. Again, GVS must provide something for the court to rely on; without some proof, the court cannot make the inferences that GVS invites.

The court acknowledges GVS's efforts to assemble the properties and Paul's additional concern that a new owner may evict the resident employees and their families during a pandemic unless there is a moratorium on such residential evictions. (NYSCEF 3, Stoler aff. ¶24; NYSCEF 150, Paul aff. ¶6.) However, stopping the UCC sale is not an option. GVS has defaulted for over sixteen months and the lender has the right to sell the collateral. The only issue is when and how the sale will be accomplished. A commercially reasonable sale is required. The goal is to maximize the sale price.

GVS is entitled to a commercially reasonable sale, not perfection. Declining market values do not render a sale commercially unreasonable. (*Chase v Wells Fargo Bank NA*, 135 AD3d 751 [2d Dept 2016].) "The pandemic, moreover, does not make any disposition inherently unreasonable." (*Iron Horse Credit LLC v Eli Wilner & Co. Inc.*, 2021 WL 743922, *1 [Sup Ct, NY County 2021].) GVS's argument that there can

654095/2020  GVS PORTFOLIO 1 B, LLC vs. TEACHERS INSURANCE ANNUITY
Motion No. 003
Page 5 of 9

5 of 9

be no commercially reasonable sale until the damaged properties are restored to their original condition is unsupported conjecture and undermined by Paul's admission that insurance claims have been made. (NYSCEF 125, Paul aff. ¶3.) Accordingly, any damage would be compensated and not depress market value.

The parties stipulated to the sales process and the court approved it, rendering the process presumptively reasonable. (*See Gannett Co., Inc., v Tesler*, 177 AD2d 353 [1st Dept 1991].) The procedures are not facially unfair, as they were initially in this matter, and as in *O'Brien v Chase Home Finance,* LLC, 42 AD3d 344 (1st Dept 2007), a case relied upon by GVS. However, interference with the terms of that process could render it commercially unreasonable. Here, the issue is whether TIAA has modified the approved Terms of Sale by selling the Loan two days before the sale.

In its reply, timely filed hours before the argument on March 19, 2021, GVS raised the argument that TIAA's sale of the Loan to one of the qualified bidders two days before the sale constitutes collusion, renders the March 10, 2021 auction commercially unreasonable, and violates the Terms of Sale which entitles GVS to five business days' notice. The court invited TIAA to submit a sur reply. (NYSCEF 168, Interim Order [seq. 003].)

The court was particularly concerned by GVS's citation of *Aubrey Equities, Inc. v SMZH 73rd Associates*, 212 AD2d 397 (1st Dept 1995), where it was alleged that: (1) SMZH, the borrower, intentionally defaulted on its first mortgage; (2) Aubrey, which shared a "common principal" with SMZH, purchased the first mortgage from the first mortgagee for "token consideration" of $10; and (3) Aubrey initiated foreclosure litigation "for the sole purpose of eliminating" the rights of a second mortgagee. (*Id*. at 397–98.)

654095/2020   GVS PORTFOLIO 1 B, LLC vs. TEACHERS INSURANCE ANNUITY            Page 6 of 9
Motion No. 003

6 of 9

The second mortgagee alleged that, because the assignment of SMZH's first mortgage to Aubrey was made only for the purpose of commencing litigation, it violated New York's champerty statute, and as a result, was void. (*Id*.) The trial court, concluding that the second mortgagee had "failed to demonstrate that the primary purpose of the assignment of the note was to commence a lawsuit," granted summary judgment to the borrower. (*Id*. at 398–99.) In reversing, the First Department reasoned that summary judgment on the borrower's champerty defense was unwarranted because "issues of fact exist[ed] concerning [the borrower's] intent in transferring the note." (*Id*.)

Here, there is no such alleged connection between TIAA and RREF. While the timing of TIAA's sale of the debt to RREF raised suspicion, and triggered this delay, there is nothing nefarious about a business seeking to advantage itself; it must be an unfair advantage that affects the commercially reasonable sale. Likewise, there is no interconnection between debts here. As there has yet to be discovery in this matter, the procedural posture differs from *Aubrey*, where a motion for summary judgment was filed, not at the preliminary injunction stage.

In light of the agreement's provision for sale of the Loan, the court cannot conclude that the sale constitutes collusion. While the timing of the sale of the Loan to RREF, two days before the auction and after the bidder qualification process ended, is suspicious in the context of this case, where GVS has already established that TIAA's initial sale was rushed and commercially unreasonable, the court cannot accept GVS's drastic invitation to infer collusion. GVS must provide more than supposition. RREF's status as a competitor is likewise suspicious, but GVS fails to explain how the sale

654095/2020 GVS PORTFOLIO 1 B, LLC vs. TEACHERS INSURANCE ANNUITY
Motion No. 003

Page 7 of 9

7 of 9

between TIAAA and REFF renders the process agreed upon by the parties commercially unreasonable.

"Secured Party," a defined term in the Terms of Sale, is defined as defendant TIAA. (NYSCEF 115, Terms of Sale, ex A at 3.) TIAA's repeated statements otherwise do not make it so. Likewise, TIAA's attempt to limit "Terms of Sale" to process only is contrary to the stipulation. (NYSCEF 112, Oct. 5, 2020 Stipulation.) Accordingly, GVS was entitled to five days' notice from March 8, 2021. GVS has now had more than five days' notice of the new Secured Party RREF. However, during that time, GVS has failed to provide the court with anything but conjecture that TIAA and RREF have colluded or that the change in ownership would depress the auction price. GVS's rhetorical questions otherwise do not make it so. Alan Tantleff's expert affidavit of March 24, 2021 (NYSCEF 170),[9] theorizing that bidders will not believe that the auction is fair to them, is based on the same speculation: TIAA and RREF colluded, RREF is a competitor making it an interested party who will act unfairly toward bidders, TIAAA was viewed by bidders as an uninterested party, and the auctioneer will favor RREF. Speculation is insufficient to stall the sale of the collateral. (*Iron Horse Credit LLC, supra.*)

As to qualified bidders, the Secured Party has the right to modify the Terms of Sale "by announcement made prior to or at the time of the public sale." (NYSCEF 115, Terms of Sale ¶7). In compliance with that requirement, and to ensure a commercially

---

[9] GVS fails to explain why Tantleff's third affidavit in this action was not submitted until 15 days after GVS initiated this motion. (NYSCEF 174, Thompson email of March 23, 2021.) TIAA's sur-reply responds to GVS's reply; it does not raise any new argument. The effect of the sale to RREF and Texas weather on the commercial reasonability of the March 10, 2021 sale has been the issue since March 9, 2021.

654095/2020   GVS PORTFOLIO 1 B, LLC vs. TEACHERS INSURANCE ANNUITY
Motion No. 003
Page 8 of 9

8 of 9

reasonable sale, the Secured Party shall notify all bidders in writing sent by email, if known, and overnight delivery, within 7 business days of this decision and order. The written notice shall include the identity of the new Secured Party and any other permissible changes to the Terms of Sale, if any. The Secured Party shall not make any changes to the Terms of Sale after that notice is given and shall so state in the notice. In addition, that notice shall include a new sale date which shall not be before 7 days from the date the notice is communicated to bidders. GVS shall receive a copy of the notice by email on the same day that it is communicated to bidders and shall be notified of any communications from bidders seeking to withdraw as bidders.

The court has considered the parties' remaining arguments and finds them unavailing without merit or otherwise not requiring an alternate result.

Accordingly, it is

ORDERED that plaintiff shall submit the March 19, 2021 transcript to be so ordered; and it is further

ORDERED that the motion is denied; and it is further

ORDERED that the TRO is vacated, and the sale may proceed as stated above.

| 3/30/2021 | | ANDREA MASLEY, J.S.C. |
|---|---|---|
| DATE | | |

| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | GRANTED | X DENIED | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |

654095/2020  GVS PORTFOLIO 1 B, LLC vs. TEACHERS INSURANCE ANNUITY
Motion No. 003
Page 9 of 9

9 of 9