**EXHIBIT 2**

**May 12, 2021 Hearing Transcript**

```
1                  UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE
2

3   IN RE:                      .  Chapter 11
                                .  Case No. 21-10690(CSS)
4   GVS PORTFOLIO I B, LLC,  .
                                .
5                               .
                                .
6                               .
                                .  824 Market Street
7             Debtor.           .  Wilmington, Delaware 19801
                                .
8                               .  Wednesday, May 12, 2021
    . . . . . . . . . . . . .   .  12:01 p.m.
9
                        TRANSCRIPT OF ZOOM HEARING
10          BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI
                  CHIEF UNITED STATES BANKRUPTCY JUDGE
11
    APPEARANCES:
12

13  For the Debtor:            Erin Fay, Esquire
                               BAYARD P.A.
14                             600 N. King Street
                               Suite 400
15                             Wilmington, Delaware 19801

16  For RREF III Storage:      Monique DiSabatino, Esquire
                               SAUL EWING ARNSTEIN & LEHR LLP
17                             1201 North Market Street
                               Suite 2300
18                             Wilmington, Delaware 19801

19  (APPEARANCES CONTINUED)

20  Electronically
    Recorded By:               Leslie Murin, ECRO
21

22  Transcription Service:     Reliable
                               1007 N. Orange Street
23                             Wilmington, Delaware 19801
                               Telephone: (302) 654-8080
24                             E-Mail:  gmatthews@reliable-co.com

25  Proceedings recorded by electronic sound recording:
    transcript produced by transcription service.
```

1  <u>APPEARANCES (CONTINUED)</u>:

2  For RREF III Storage:       James Michael Peck, Esquire
                               Theresa A. Foudy, Esquire
3                              MORRISON & FOERSTER LLP
                               250 West 55th Street
4                              New York, New York 10019-9601

5  For the U.S. Trustee:       Linda Richenderfer, Esquire
                               OFFICE OF THE UNITED STATES TRUSTEE
6                              J. Caleb Boggs Federal Building
                               844 King Street
7                              Suite 2207, Lockbox 35
                               Wilmington, Delaware 19801

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1                                    <u>INDEX</u>

2    <u>MATTERS GOING FORWARD</u>:                                <u>PAGE</u>

3    Agenda
     Item 1:   Motion for Entry of an Order Dismissing the
4              Debtor's Chapter 11 Case with Prejudice and
               Granting Relief from the Automatic Stay
5              [Date filed: 4/26/2021; D.I. 8].

6              Status Conference                           4

7    Court's Ruling                                        17

8

9    Transcriptionist's Certificate                        23

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1            (Proceedings commenced at 12:01 p.m.)

2            THE COURT:  Good afternoon, East Coast time.  Good

3    morning, West Coast time, if anybody is coming from the West

4    Coast.

5            Mr. Peck, you were on the call five different

6    times and you look different every time.  And, unfortunately,

7    I think the worst image is your original.

8            MR. PECK:  I'm afraid you're right.  I can also

9    stop my video, if that's more helpful.

10           THE COURT:  No, no.  No, no, absolutely not.  It's

11   good to see you.  All right.

12           MR. PECK:  You as well.

13           THE COURT:  I understand there's an impasse on

14   scheduling in connection with the motion to dismiss.  So I

15   think the movant really prompted the call, so I'll hear from

16   them first.

17           MS. DISABATINO:  Great.  Your Honor, good

18   afternoon, this is Monique DiSabatino from Saul Ewing

19   Arnstein & Lehr on behalf of RREF III Storage LLC.  Here

20   today is co-counsel from Morrison & Foerster, we have James

21   Peck -- we have multiple James Pecks -- sorry -- but we have

22   James Peck, Your Honor, we have Haimavath Marlier, Mark

23   Lightner, and Theresa Foudy.  A motion for Ms. Foudy's

24   admission *pro hac vice* was approved earlier this week and, if

25   Your Honor would permit, I will cede the podium to her to

1  discuss the motion.

2          THE COURT:  Very good, happy to do so.

3          MS. FOUDY:  Thank you, Your Honor.  Good

4  afternoon, Your Honor, Theresa Foudy of Morrison Foerster on

5  behalf of RREF III Storage LLC, the debtor's secured lender.

6          Your Honor, in attempting to come to a reasonable

7  schedule for a hearing on our motion to dismiss, we

8  unfortunately ran into an impasse over whether the start of

9  the hearing should be delayed in order to allow the debtor to

10 retain an appraiser, obtain an appraisal report, and conduct

11 expert discovery, and to serve discovery to both the secured

12 lender and third parties that basically seeks to re-litigate

13 issues that were already decided in the New York state court

14 foreclosure proceedings.  While we realize that the

15 alternative relief we sought in our motion of seeking to lift

16 the stay does implicate value, we are also convinced, for

17 reasons that I will explain in a moment, that our motion to

18 dismiss does not and should require little, if any,

19 discovery.

20         We have thus proposed that the motion to dismiss

21 be bifurcated from the motion to lift the stay because the

22 motion -- if the motion to dismiss is granted, it will

23 obviate the need to litigate the lift-stay motion and, thus,

24 save the estate the considerable expense that would be

25 involved in the extensive discovery that the debtor has

1  served and in retaining an appraiser.

2        And saving these expenses is of no small concern

3  here.  This is a debtor who has no cash on hand and whose

4  attorneys were paid by a prepetition retainer from the

5  debtor's equity holder.  It is entirely unclear how the

6  administrative expenses of retaining an appraiser and paying

7  court reporters and the other inevitable expenses of a large

8  discovery effort would be funded.  Thus, we believe it is

9  much preferable to potentially avoid all that unnecessary

10 expense by going forward first on the motion to dismiss.

11       Now, I know the debtor's response is to say that

12 bifurcation does not avoid any unnecessary expense because

13 all the same discovery is necessary for the motion to dismiss

14 hearing, but that is just not right, Your Honor, as a matter

15 of law.  Under Third Circuit precedent, when a motion to

16 dismiss is made under Section 1112, the burden is placed upon

17 the debtor to show that it had a good faith basis for its

18 bankruptcy filing.

19       The debtor made a decision here on April 12th to

20 file a bankruptcy petition.  All the information the debtor

21 needs to show was the basis it had for making that decision

22 is necessarily within the debtor's own possession, custody,

23 and control, not in the possession, custody, and control of

24 the secured lender or any other third party.  An appraisal

25 that was not in existence at the time the debtor made that

1  decision could not possibly have affected that decision or

2  given the debtor a good faith basis for filing its bankruptcy

3  petition.  If Nathan Paul (ph), who signed the petition,

4  wants to testify that he did so because he believes that

5  there is value, he can do so, he just needs to explain his

6  rationale and thinking at the time based on the information

7  that he possessed at the time.  And whatever that information

8  was, it didn't include an appraisal that was not yet

9  conducted or discovery from third parties that had not yet

10  been produced.

11          The debtor should not need any discovery to

12  establish why it filed for bankruptcy.  The debtor should

13  already know why it filed for bankruptcy and be able to prove

14  it.  If the debtor did not know it had a good faith basis for

15  filing a Chapter 11 petition on April 12th without having an

16  appraisal and discovery from third parties, then the debtor

17  should not have filed the petition.

18          The debtor says that this Chapter 11 is all about

19  maximizing value and that it needs the appraisal and

20  discovery to show that there is equity value there, but the

21  mere existence or nonexistence of equity value does not

22  establish a valid bankruptcy purpose for a Chapter 11 filing.

23  The debtor has to show that it is preserving a going concern

24  or that it is adding or creating value that otherwise would

25  be unavailable to creditors outside of bankruptcy.

1          In essence, the debtor is attempting to show that

2    value is being maximized by the bankruptcy filing staying the

3    UCC foreclosure sale that was ordered by a court.   The debtor

4    has served discovery that is entirely focused on the

5    foreclosure proceeding and the sales and marketing process.

6    In other words, the debtor is mounting an impermissible

7    collateral attack on the New York state court's decision

8    finding that the scheduled UCC foreclosure sale was

9    commercially reasonable and ordering it to go forward.   That

10   New York state court decision was made following a court-

11   ordered, robust marketing process that the debtor agreed to,

12   and that spanned several months and resulted in eight bidders

13   being qualified to participate in the scheduled auction.   If

14   the debtor had not thwarted that auction by filing a Chapter

15   11 filing, the auction would have been definitive proof of

16   value and, if the proceeds were sufficient to cover the

17   secured debt, the excess would have gone to the debtor.

18          On such facts, regardless of what the value of the

19   debtor is, there is no legitimate purpose for this

20   bankruptcy.   All it does is diminish value by running up

21   administrative expenses that the debtor has no funding to

22   pay.   The facts necessary for the motion to dismiss hearing

23   either are or should be undisputed, and appear to set forth a

24   paradigmatic example of what courts have found to be bad

25   faith filings.

1       The debtor is a holding company with one asset

2   that is pledged to a secured lender.  There are no or few

3   other creditors.  It is a two-party dispute in which the

4   debtor is seeking tactical litigation advantage to

5   collaterally attack the New York state court's decision.  The

6   filing occurred within one hour of a court-ordered

7   foreclosure sale.

8       Under 11 U.S.C. 1112(b)(3), a hearing on a motion

9   to dismiss is to commence within 30 days after the filing of

10  the motion to dismiss unless the movant consents or

11  compelling circumstances prevent the court from meeting the

12  time limit.  Thirty days is May 26th and there is an omnibus

13  hearing scheduled on that date.  We believe it's the most

14  reasonable, efficient, and just course to hold a hearing on

15  the motion to dismiss on that day, consistent with the time

16  limits set forth in Section 1112.  The relevant facts are

17  straightforward and should not be contested.  Relatively

18  little, if any, discovery is necessary to decide the motion

19  to dismiss.

20      As Your Honor knows, bankruptcy confers many

21  benefits, privileges, and protections upon a debtor in order

22  to effectuate the greater societal goals of the bankruptcy

23  code, but those benefits come with responsibility too and

24  they should not be abused.  And it is not too much to ask a

25  debtor to prove that it has a good faith basis for its filing

1  and to do so within 30 days of the motion to dismiss being

2  filed.

3         If Your Honor agrees with us that the motion to

4  dismiss should go forward on May 26th and that the stay

5  relief should be bifurcated, we would propose to meet and

6  confer with the debtor to come to a pre-hearing schedule

7  consistent with that ruling.

8         Thank you.

9         THE COURT:  Thank you very much.

10        Ms. Fay?

11        MS. FAY:  Good morning -- or good afternoon, Your

12  Honor, Erin Fay from Bayard on behalf of GVS.  Your Honor,

13  we're here on a scheduling conference, but I think we've just

14  heard an argument on the motion to dismiss in general.

15        It has always been the debtor's position that

16  value is at the heart of this case and it believed that when

17  it filed.  There are -- there is valuation evidence; however

18  that evidence, to the extent it's a formal appraisal, is

19  dated.  The debtor believes the most efficient and the most

20  appropriate path is to kind of bring that forward to give

21  Your Honor the best evidence absent an actual sale process or

22  an actual indication of market value, but the best process is

23  to use experts.  We have endeavored to bring that process as

24  quickly as possible through this court and we think that we

25  can get an expert to do a report status within four weeks,

1   and that we can effectuate discovery, both an expert and fact

2   discovery, in a relatively short and appropriate time period.

3           I understand that the secured lender believes

4   there is urgency here, but this is a contested matter under

5   9014 and the debtor has served discovery on RREF and three

6   third parties.  RREF has likewise served discovery on the

7   debtor.  It has served expansive discovery that,

8   unsurprisingly, goes to value.

9           Value is at issue without regard to bifurcation;

10  it is an issue in good faith and it is an issue in the lift-

11  stay portion.  So bifurcation, in our view, does not -- it

12  does not help here, it also potentially is inefficient in the

13  sense that, if the motion is unsuccessful, we would be back

14  before Your Honor on similar issues and that is an

15  inefficient use of the process here.

16          In an attempt to reach an agreement, you know, the

17  process we have set forth, with Your Honor's calendar

18  permitting, would get us to trial at the end of June.  That's

19  an additional four weeks to run through a process that

20  actually has procedural and substantive abilities for the

21  debtor to put forward its case.  We would propose that the

22  fact discovery would be produced in a few weeks, followed by

23  depositions and fact witnesses.  The debtor's expert report

24  would be provided on or about June 16th, followed by a

25  deposition, and then papers would be filed.

1          The whole matter, although expedited, would be

2    presented to Your Honor in a comprehensive and complete

3    package by the end of June.

4          The scheduled RREF demands would somehow take us

5    to trial in two weeks.  This is not feasible; this is highly

6    prejudicial to the debtor.  The debtor can only infer that

7    RREF intends to prevent the debtor from presenting an

8    organized and meaningful response to its motion and to the

9    fundamental question of whether this case will permit the

10   debtor to maximize value for all of its constituents.

11   Indeed, as we mentioned at the prior status conference, the

12   sponsor took years to accumulate this portfolio and put forth

13   tireless efforts to improve and manage it.  RREF has owned

14   this piece of paper for two months and we are highly

15   skeptical of the process in which it came to own its paper.

16          All of these are fundamental facts that are

17   necessary to be investigated for the motion to dismiss.  In

18   fact, RREF here bought the debt with full knowledge of the

19   circumstances of the debtor and we anticipate the evidence

20   will show that it bought with knowledge of the substantial

21   equity cushion that exists here.

22          In view of these facts, it is clear that this

23   dispute is not about a lender trying to collect on a debt,

24   but rather a competitor seeking to grab value in a rushed

25   process.

1       (Ringing)

2           THE COURT:  Sorry, I'm going to have to confiscate

3    my own phone.  I apologize.

4           MS. FAY:  Your Honor, as we previously mentioned,

5    this whole (indiscernible) was performing prior to COVID.

6    Yes, there were impacts of COVID on this debtor.  In that

7    context, there were initial proceedings in state court, those

8    -- in those proceedings, RREF's predecessor was found to have

9    put forth a commercially unreasonable process and a longer

10   process was put in place.

11          But at a critical moment, one day before the

12   scheduled auction, RREF, a competitor to the debtor who's

13   known to be highly aggressive, saw an opportunity.  It

14   purchased the debt.  It began to stifle any meaningful and

15   value-maximizing process that potentially could have resulted

16   in the state court foreclosure.  And at that time, one day

17   before the auction, RREF revealed to the other auction

18   participants that it would be directing the sale.  In the

19   debtor's view, this was just incredibly value-destructive and

20   unlikely to maximize value in that process, and given the

21   debtor's view of value it determined to file this case.

22          Now, the matter in New York and this matter before

23   this Court are different.  The state court had predetermined

24   the foreclosure as the matter over which that court was

25   presiding.  This Court is a court of equity, its mandate is

1   to give debtors a breathing spell to develop and implement

2   processes that best maximize value for all beneficiaries, and

3   that's what the debtor intends to do.  GVS is in the process

4   of hiring professionals to implement a restructuring strategy

5   with an independent restructuring adviser.  Mr. Tantleff from

6   FTI, the proposed CRO, is on the conference today.

7           Your Honor, we believe if we're able to take

8   evidence that the evidence will show that GVS filed this case

9   to maximize value and it remains committed to doing so.

10          So the substance of the dispute, however, Your

11  Honor, today is not before you, today is about scheduling.

12  As RREF counsel noted, we have met and conferred several

13  times.  We have not come to an agreement as to the -- you

14  know, the final hearing date from which we work back some of

15  the other dates.  It was a surprise to us that they last week

16  determined they would like to bifurcate the motion, but, as I

17  previously mentioned, we don't think that actually solves the

18  problem because valuation is critical across the board.  And

19  that valuation testimony, including the expert testimony, the

20  fact discovery, will show that there were offers in the

21  market for this debtor and there were valuations by RREF's

22  predecessor that exceed debt stack by more than $75 million,

23  which is not a small equity cushion, and at these amounts the

24  proposed foreclosure was nothing more than a forfeiture.

25          So GVS is presenting a process to this Court that

1   we think will resolve it and the best evidence that the Court

2   can have under an expedited time frame to make an appropriate

3   ruling on both the motion to dismiss and also the motion for

4   lift stay.

5          Thank you, Your Honor.

6          THE COURT:  Well, thank you, but what about the

7   statute?  It says 30 days absent compelling circumstances.

8          First of all, I have, I guess, a factual question.

9   Why is it taking four weeks to get a valuation?  But if

10  that's the case, is that truly compelling circumstances,

11  especially since, again, at least some of the case law

12  suggests when I'm looking at the filing in good faith I'm

13  looking at it as of the petition date, not based on

14  information that was obtained by the debtor weeks, if not

15  months after filing.

16         MS. FAY:  So, Your Honor, the motion to dismiss

17  was filed about two weeks ago we've spent some time,

18  obviously, with RREF working through what we thought was

19  going to be a longer process and we're talking to experts

20  along the way.  Given, you know, the breakdown of those

21  discussions last week, there was maybe a little bit of a

22  pause on the experts, but we expect to have retention letters

23  today.  The underlying exercise here in valuation requires

24  consideration of 62 properties across ten states, so it's not

25  a small endeavor and we think four weeks is a short but

1  appropriate amount of time to get that.

2          Again, the valuation, there were valuations done

3  prepetition and the debtor certainly considered those, and I

4  think RREF's declaration attached -- we don't actually know

5  how the evidence in that declaration -- what it relies upon,

6  there's a valuation number in their declaration, but we think

7  that it's most appropriate -- although of course the debtor

8  believes there was equity cushion and value as of the

9  petition date -- to have an actual snapshot of reality as it

10 sits today and that, given the importance of the issues here,

11 it is better to all of its constituents and to the case that

12 there are compelling circumstances here.

13          The statute certainly permits Your Honor to set a

14 schedule that's appropriate and we've laid out the reasons

15 why we think our schedule is appropriate and, given the

16 importance of the issues here, we believe they're compelling.

17          THE COURT:  All right, thank you.

18          Ms. Richenderfer, do you have any comment?

19          MS. RICHENDERFER:  Yes.  Thank you, Your Honor.

20 The United States Trustee at this point in time has no

21 comment on the motion to dismiss or the proposed schedule;

22 however, we do have a concern, which is this.  We are one

23 month into this case; there have been no retention

24 applications filed, the debtor has no bank accounts, and I

25 see no source of funding.  And so I hear Ms. Fay go through a

1  list of professionals that are going to be hired, including a

2  CRO, and right now this debtor has no money.  It doesn't have

3  a bank account, it doesn't have a loan, and the prepetition

4  retainers were paid for by the ultimate equity owner.

5          So, on paper, I do have a concern regarding this

6  matter moving forward without this debtor obtaining or at

7  least putting before the Court the type of financing it is

8  going to use to move forward as it goes through this process

9  of retaining professionals and putting them in place.  I have

10 not heard that addressed -- not that that's an issue for the

11 motion to dismiss, but perhaps that just takes us back to the

12 reasons why the motion to dismiss was filed in the first

13 place, this is not an operating debtor.

14         So that's the concern that the U.S. Trustee's

15 Office has at this point in time.

16         THE COURT:  Okay.  Thank you.

17         Ms. Fay, would you like to address that?

18         MS. FAY:  Your Honor, at this time the case

19 funding would have to come from the equity sponsor -- I mean,

20 RREF would have to be primed, which although that may touch

21 on issues that, you know, are relevant in the motion to

22 dismiss, it is not presently a DIP funding proposal.

23         THE COURT:  Okay.  All right.  Well, no, we're

24 going to have -- we're going to follow the statute and we're

25 going to have a hearing.  I haven't heard anything today

1  really that would rise to the level of compelling

2  circumstances.  Certainly, it would be preferable, it usually

3  is, to have a more lengthy and organized process leading to a

4  contested evidentiary hearing, but we also do things in short

5  order in bankruptcy because we're compelled to by exigent

6  circumstances.  And here I just don't see procedural niceties

7  of further discovery being sufficient to justify a finding of

8  compelling circumstances.

9          In addition, I am very concerned with what Ms.

10  Richenderfer has just said, the fact that there's no bank

11  account, the fact that there is no financing bill currently.

12  As Ms. Fay stated, it would have to be -- it would have to

13  prime the secured creditor, which of course would be

14  contested, and any further funding of this litigation will

15  have to come as a contribution by equity, I suppose, but you

16  can't -- you can't use -- you can't operate an estate being

17  paid by a non-debtor, that money has to flow through the

18  estate, I think -- I may be wrong there, but I think that's

19  the case -- in which case that way the Court can keep an eye

20  on what's being spent and what administrative expenses are

21  getting paid and to make sure they're appropriate.

22          So this is very, very unusual and I think speed

23  here, as (indiscernible) plain meaning of the statute,

24  clearly is more important than any desire to update

25  valuations that were previously done.

1          So we're going to have a hearing on May 26th.  Let

2   me just look at my calendar here for this.

3        (Pause)

4          THE COURT:  Which I think is the 30th day.  It's a

5   busy day, but we will start at 10:00 a.m.  We may have to

6   take some breaks to handle some other matters, none of which

7   are particularly pressing as far as I understand.  So we'll

8   just go as long as we have to go in connection with that.  So

9   please work out a schedule that works, but if it means you

10  can't get an appraiser in time for the hearing, you'll just

11  have to rely on other evidence.

12          You know, I would point out too, you were in

13  bankruptcy for several weeks before the motion to dismiss was

14  filed.  So you didn't file anything, you haven't, you know,

15  filed any financing or retention, any kind of requests for

16  relief by the Court.  So I don't think, especially given what

17  I heard from you, Ms. Fay, about how we got here, that it

18  should have been a surprise this was coming.

19          So, with all due respect, I'm going to force the

20  debtors to follow the statute and have a hearing on May 26th,

21  starting at 10:00 a.m., and the Court will issue its decision

22  within 15 days of commencement of the hearing, as required by

23  the statute.

24          Okay?

25          MS. FOUDY:  Your Honor, one other issue that --

1  thank you, Your Honor -- we wanted to raise one other issue

2  that has arisen and that's -- we understand that currently

3  the underlying property owners are required to remit monthly

4  payments into a designated cash management account held by

5  the servicer, which is PNC Bank, and the servicer then

6  distributes those funds pursuant to a waterfall which results

7  in debt service payments to the secured lender and that's our

8  cash collateral.  And in the debtor's initial monthly

9  operating report that was filed on April 26th, its cash flow

10 projections reflect the monthly waterfall payment going to

11 the secured lender, that's what it says in the monthly

12 operating report; however, the servicer will not release the

13 funds to the secured lender without an invoice, and we're

14 concerned -- we don't want, you know, sending an invoice to

15 the servicer to release those funds to be -- we're looking

16 for comfort that that would not be viewed as a violation of

17 the stay if we were to issue an invoice.

18          So I don't know if, you know, the debtor can

19 stipulate that they'll lift the stay to the extent it's

20 necessary to allow the servicer to pay us cash, but, you

21 know, their operating report did contemplate that the money

22 would come to us.

23          THE COURT:  Well, first of all, the debtor can't

24 agree to lift the automatic stay, you need a court order.  So

25 you would have to have a stipulation and order.  And, if

1   they're not going to agree, you're going to have to move.

2   And I'm certainly not going to give you an oral comfort or a

3   limited information at a scheduling conference that says it's

4   okay to violate the automatic stay, if that is in fact what

5   would happen.

6            So I think -- you know, I leave it to Ms. Fay to

7   respond -- I don't think she needs to respond right now -- to

8   respond to you and, if you can't get an agreement, you'll

9   have to file some sort of paper with the Court.  You know,

10  the automatic stay is obviously very important and lifting it

11  either by agreement or certainly on a contested basis has to

12  be litigated properly, and that's one where I don't have to

13  have a hearing -- well, I do have to have a hearing in 30

14  days, actually -- well, it depends on what kind of stay

15  relief it is.

16           But see if you can work it out with Ms. Fay and,

17  if not -- if so, you can submit a stipulated order to the

18  Court under certification of counsel and I'll approve it; if

19  not, you're going to have to institute some sort of process.

20           MS. FAY:  Your Honor, can I ask for one

21  clarification?

22           THE COURT:  I can't hear you for some reason.  Is

23  that me?

24           MS. FAY:  My microphone looks like it's working.

25           THE COURT:  Okay, go ahead.

1          MS. FAY:  Can you hear me now, Your Honor?

2          THE COURT:  Ah, better, yes.

3          MS. FAY:  Sorry about that, I'm not sure what

4    happened.  One clarification, if you would, on what's going

5    forward on the 26th.  Is it just the motion to dismiss --

6          THE COURT:  Yes, yes.

7          MS. FAY:  Thank you, Your Honor.

8          THE COURT:  Okay?  Anything else from anyone?

9          Okay.  Thank you all very much.  Have a good day.

10   We're adjourned.

11          COUNSEL:  Thank you, Your Honor.

12       (Proceedings concluded at 12:28 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              CERTIFICATION

2             I certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of my

5    knowledge and ability.

6

7

8

9    /s/ Tracey J. Williams                    May 13, 2021

10   Tracey J. Williams, CET-914

11   Certified Court Transcriptionist

12   For Reliable

13

14

15

16

17

18

19

20

21

22

23

24

25